No. 21954.

Calvin Emery Sayers *v*. American Janitorial Service, Inc., a Colorado corporation, and Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado).

(425 P.2d 693)

Decided April 3, 1967.

HARRY L. HELLERSTEIN, SAMUEL D. MENIN, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES D. McKEVITT, Assistant, for defendants in error Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado).

*In Department.*

Opinion by MR. JUSTICE DAY.

PLAINTIFF in error made application for unemployment compensation by reason of being discharged from his employment with defendant in error American Janitorial Service. After a hearing before a referee of the Industrial Commission, the Ex-officio Unemployment Compensation Commission of Colorado, it was determined that the employee was not entitled to unemployment compensation and an order showing "no award" was entered. Upon review this ruling was affirmed by the Industrial Commission. The district court of the City and County of Denver upon review of the Commission's record also affirmed the "no award" order.

The question before this court is whether the record supports the determination of the Commission. We find that it does.

One who is discharged from his employment is

entitled to unemployment compensation unless the reason for his discharge comes within one of the grounds provided for in the act. The referee and the Commission found that the employee "was discharged because of insubordination." The actual words used by the referee were: "Claimant was discharged by the employer for having failed to follow instructions. Under section 82-4-8 (5) (b) (1) of the law no award of benefits shall be granted."

The pertinent section under which the Commission determined that the employee was not entitled to compensation reads as follows: "Insubordination such as: * * * deliberate disobedience of a reasonable instruction of an employer or his duly authorized representative; * * *." The precise words "deliberate disobedience" have not been heretofore defined and interpreted in this jurisdiction nor are we favored with citation of authority in which these precise words have been before courts of other jurisdictions. Our own research has also failed to disclose any pertinent cases on the subject. Similar words, however, are used in the unemployment statutes in other states. For example, the act in Pennsylvania provides for ineligibility for compensation "for willful misconduct connected with his work * * *." In *Riehl v. Unemployment Compensation Board of Review*, 178 Pa. Super. 400, 116 A.2d 271, the Pennsylvania court, in dealing with the words "willful misconduct" said that they do "not necessarily require actual intent to wrong the employer. If there is a conscious indifference to the perpetration of a wrong, or a *reckless disregard* of the employee's duty to his employer he can be discharged for 'willful misconduct' and will be denied compensation." (Emphasis added.)

The court in *Riehl v. Unemployment Compensation Board of Review, supra,* further stated that it is difficult to mark the precise connotative boundaries of the term "willful" as employed by the law since the word carries various shades of meaning; it takes on the color of its

context, and that, therefore, what is "willful" depends primarily upon a determination of factual matters.

In this case the evidence of reckless disregard of the employer's interest shows that the employee had been working as a janitor for the janitorial service which contracted its services with various business establishments, and that the employee's conduct resulted in the loss of some accounts. In the six months prior to his being discharged, the employee had been repeatedly warned "on six or seven occasions" that in mopping the floor he was sloppily splashing up the walls, the bottom of doors, and the lockers on the premises of the customers; that he failed at another place to buff the floor as he knew he should; that when these matters were called to his attention he merely replied "okay" but that he continued to carelessly leave splash marks around after his work had been done. There was further testimony that he was given precise instructions, which, if followed, would result in no splash marks being on the walls; specifically, he was told "not to lay his water and don't take such a big area. Lay his water and pick it up and keep his mop down on the floor, not raised up." He was also instructed to use his wiping cloths around the lower portions of the area adjacent to the floor.

The employee does not deny that he was told about his unsatisfactory work and that he was warned several times (he stated two or three) not to leave splash marks on the bottom of walls and doors. He denied that he was leaving splash marks; contends that he was careful; and that he didn't believe "to this day" that there were any splash marks around.

██ This case, therefore, presents a disputed question of fact to be resolved by the trier of the facts. We again reiterate that which is so axiomatic that we no longer cite authorities in support thereof, namely, that the Industrial Commission's determination of facts will not be disturbed on review either by the trial court or by this court. We hold that the trial court was correct

in affirming the decision of the Industrial Commission. The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.