**SALIDA SCHOOL DISTRICT R-32-J, Petitioner,**

v.

**Karen L. MORRISON, Respondent.**

**No. 85SC64.**

Supreme Court of Colorado, En Banc.

Feb. 17, 1987.

Rehearing Denied March 9, 1987.

---

Law Offices of Reese Miller, P.C., Kenneth A. DeLay, Reese Miller, Denver, Rush & Rush, Robert P. Rush, Salida, for petitioner.

Hobbs/Bethke & Associates, Larry F. Hobbs, P.C., William P. Bethke, Vonda G. Hall, Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review the court of appeals decision in *Morrison v. Salida School District R–32–J*, 701 P.2d 101 (Colo. App.1984), which held that findings of fact entered in an unemployment compensation hearing estopped the claimant's employer from relitigating issues determined at the hearing in a subsequent suit for damages or equitable relief pursuant to 42 U.S.C. § 1983 (1982). We reverse and remand with directions.

## I.

The plaintiff, Karen Morrison, was a non-tenured high school English teacher employed by the defendant, Salida School District R–32–J (School District). On April 8, 1980, the School District voted not to renew Morrison's teaching contract for the 1980–81 school year.

In the summer of 1980, Morrison filed a claim for unemployment compensation under the Colorado Employment Security Act, sections 8–70–101 to 8–82–105 (1986). A deputy of the Division of Employment and Training (Division) found that Morrison's contract was not renewed due to lack of work, and awarded full benefits to her. An appeals referee of the Division affirmed the decision, and entered the following findings of fact:

> The principal recommended non-renewal of the claimant's contract for the 1980–1981 school year. He had received comments from the teachers in the school that the claimant was too outspoken for a new staff member. The principal had mentioned this to the claimant once during the first year of her employment, but at no other time. She was never given indication that her outspokenness might jeopardize her job. He had also been told that the claimant had expressed negative opinions as to the teaching guideline[s] set out by the local school district. However, there was no indication that she refused to follow the guidelines and he was satisfied with her teaching when he observed her in the classroom.
>
> *The referee finds that the claimant was discharged from her position because of her outspokenness. She was not given any indication that she was in danger of losing her job for this or any other reason.* It is concluded, therefore, that this separation was the responsibility of the employer.

(Emphasis added.) The School District did not appeal the referee's decision.

On March 15, 1982, Morrison brought suit against the School District pursuant to 42 U.S.C. § 1983 (1982), alleging that the School District's decision not to renew her teaching contract violated her rights under the first and fourteenth amendments to the United States Constitution. She also claimed that the School District's decision violated Article II, sections 10 and 29, of the Colorado Constitution. Morrison sought compensatory and punitive damages, expunction of the record of the nonrenewal of her contract, and an equitable order of reinstatement. In its answer, the School District denied that its failure to renew Morrison's teaching contract deprived her of any constitutional right. As an affirmative defense, the School District alleged that it would have reached the same decision in the absence of protected conduct.

On January 27, 1983, Morrison moved for summary judgment as to the School District's liability. She claimed that the referee's finding in the unemployment com-

pensation proceeding that she was dismissed for her "outspokenness" was binding on the School District under the doctrine of collateral estoppel, and that she was entitled to judgment as a matter of law. The district court agreed, and entered judgment as to liability against the School District. In subsequent proceedings, the district court ordered Morrison's reinstatement for a period of not less than two years, and directed the School District to expunge the record of Morrison's non-renewal and to remit back pay in excess of $25,000. The district court also awarded attorneys' fees and costs to Morrison in the amount of $5,688.89.[1]

The School District appealed, and the court of appeals affirmed. The court of appeals held that the referee's findings of fact were binding on the parties in the subsequent section 1983 action, and that Morrison's termination for her "outspokenness" established a prima facie case of retaliatory discharge in violation of the first amendment to the United States Constitution. Because the School District failed to rebut Morrison's prima facie case by means other than argument of counsel in its response to her motion for summary judgment, the court of appeals concluded that the School District failed to establish a genuine issue of material fact.

## II.

 The doctrines of collateral estoppel and res judicata "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Collateral estoppel bars relitigation of an issue determined at a prior proceeding if (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated at the prior proceeding; (2) the party against whom estoppel is sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Industrial Commission v. Moffat County School District Re No. 1*, 732 P.2d 616 (Colo.1987); *People v. Hearty*, 644 P.2d 302, 312 (Colo. 1982); *Pomeroy v. Waitkus*, 183 Colo. 344, 350–51, 517 P.2d 396, 399 (1974). If the doctrine applies, the final decision of an adjudicative body on an issue actually litigated is conclusive of that issue in a subsequent action. *Pomeroy*, 183 Colo. at 350, 517 P.2d at 399. The doctrine may be applied to the decisions of administrative bodies as well as to the judgments of courts. *Industrial Commission v. Moffat County School District Re No. 1*, at 620; *Umberfield v. School District No. 11*, 185 Colo. 165, 173–74, 522 P.2d 730, 734 (1974).[2]

In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that federal courts must apply traditional concepts of collateral estoppel in a section 1983 action.[3] *Id.* at 103–04, 101 S.Ct. at 419–20. In later cases, the Supreme Court has reaffirmed and ex-

1. Attorneys' fees may be awarded to the prevailing party in a section 1983 action pursuant to 42 U.S.C. § 1988 (1982).

2. Relying on *Umberfield*, the Colorado Court of Appeals in *Colorado Springs Coach Co. v. State Civil Rights Commission*, 35 Colo.App. 378, 536 P.2d 837 (1975), *cert. denied*, 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976), held that an Industrial Commission order rejecting an employee's claim of racial discrimination barred subsequent proceedings before the Colorado Civil Rights Commission on the same claim. We express no opinion on the preclusive effect that must be given to an order of the Industrial Commission in an action before the Civil Rights

Commission, but to the extent *Colorado Springs Coach Co.* is inconsistent with this decision, it is overruled.

3. In *Allen*, the plaintiff brought suit under section 1983 to recover damages for an allegedly unconstitutional search which led to his arrest and conviction for the possession of heroin. The Supreme Court held that the trial court's determination on a motion to suppress that the search was constitutionally permissible precluded the federal court from relitigating that issue in a subsequent suit for damages under section 1983.

panded the rule announced in *Allen.* *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (a final state court judgment bars review in a section 1983 action of issues that could have been raised in the state court suit); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (a federal court must give preclusive effect to a state court decision upholding an administrative agency's rejection of the plaintiff's employment discrimination claim). A federal court deciding a section 1983 claim must give the same preclusive effect to an unappealed decision of a state administrative body as that decision would be given in the courts of the state in which the decision was rendered. *University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). *See also Migra,* 465 U.S. at 81, 104 S.Ct. at 896; *Kremer,* 456 U.S. at 481–82, 102 S.Ct. at 1897–98.

We therefore must determine the preclusive effect that must be given by our state courts to issues resolved in an unemployment compensation proceeding. Because of the differences between the two proceedings involved in this case, we conclude that collateral estoppel does not apply.[4] The remedies available and procedures followed in a section 1983 action are materially different from the remedies and procedures available in an unemployment compensation proceeding, the issues presented are not identical, and the employer has little incentive to defend a claim for unemployment benefits vigorously.

### III.

The Colorado Employment Security Act (CESA), section 8–70–101 to 8–82–105 (1986), is designed to lighten the burden of unemployment, "which ... falls with crushing force upon the unemployed worker and his family." § 8–70–102, 3B C.R.S. (1986). CESA establishes a mechanism by

which funds are accumulated to provide compensation for a limited time to those who are involuntarily unemployed through no fault of their own. § 8–73–108(1)(a), 3B C.R.S. (1986); *Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973); *Andersen v. Industrial Commission,* 167 Colo. 281, 447 P.2d 221 (1968). A dismissed employee is not entitled to reinstatement or back pay in the event his termination was unlawful, and a worker who receives unemployment compensation is entitled to only a statutorily prescribed unemployment benefit which is less than his salary and which lasts for a limited time. §§ 8–73–102 and –104, 3B C.R.S. (1986).

Unemployment compensation hearings are conducted according to regulations prescribed by the Division, and such regulations need not conform to common law or statutory rules of evidence or other technical rules of procedure. § 8–74–106, 3B C.R.S. (1986). Discovery in an unemployment compensation hearing may be restricted. *See* Rule 11.2.8, 7 C.C.R. 1101–2, at 35 (1977); *Denver Symphony Association v. Industrial Commission,* 34 Colo. App. 343, 526 P.2d 685 (1974). The matter in controversy is small and the legal issues are limited, and, consequently, the hearings are often informal. *See* Rule 11.2.9, 7 C.C.R. 1101–2, at 35 (1977); *Asche v. Industrial Commission,* 654 P.2d 813 (Colo. 1982) (hearing conducted by telephone).

Restatement (Second) of Judgments § 28(3) (1982) recognizes that the findings of an adjudicative body which did not have subject matter jurisdiction over a subsequent claim may not bind an adjudicative body which is considering the subsequent claim if the quality and extensiveness of the two proceedings are not comparable. Comment d to section 28 states:

> Not infrequently, issue preclusion will be asserted in an action over which the court rendering the prior judgment

4. The ruling of this case is of little precedential value. Section 8–74–108, 3B C.R.S. (1986), as amended July 1, 1984, now provides: "[Unemployment compensation d]eterminations made under articles 70 to 82 of this title shall not be

binding on the parties under any other statutory or contractual relationship or on any other agency or court." *See* Ch. 60, sec. 9, § 8–74–108, 1984 Colo.Sess.Laws 313, 318.

would not have had subject matter jurisdiction. In many such cases, there is no reason why preclusion should not apply; the procedures followed in the two courts are comparable in quality and extensiveness, and the first court was fully competent to render a determination of the issue on which preclusion is sought. In other cases, however, there may be compelling reasons why preclusion should not apply. *For example, the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim.*

(Emphasis added.)

■ An unemployment compensation hearing is designed to adjudicate promptly a narrow issue of law, and to grant a limited remedy to an unemployed worker. The use of an unemployment compensation decision to bind the parties in a subsequent section 1983 action in which the employee seeks reinstatement and over $31,000 in back pay and costs would be wholly inappropriate, and would frustrate the underlying purposes of CESA and collateral estoppel. If findings entered at an unemployment compensation hearing may be used to establish the employer's liability for unlawful discharge in a subsequent lawsuit, the employer would have a strong incentive to use its superior resources consistently to oppose a discharged employee's claim for unemployment benefits. Issues presented to the Division will be contested strongly, and the hearings will become lengthy and more detailed, and will no longer be suited to the prompt resolution of unemployment compensation claims. Judicial economy would be frustrated, rather than improved, as many unemployment compensation hearings become forums in which claims for unlawful or unconstitutional discharge are tried. The trial court therefore improperly applied collateral estoppel in this case.

IV.

In *Industrial Commission v. Moffat County School District Re No. 1,* 732 P.2d 616 (Colo.1987), we held that findings of fact entered in a dismissal proceeding under the Teacher Employment Dismissal and Tenure Act were not binding on the parties in a subsequent unemployment compensation proceeding, where the issues presented in the two proceedings were not identical. In this case, the requisite identity of issues is also lacking.

■ Under section 8–73–108(5)(e), 3B C.R.S. (1986), the Division must deny benefits to an employee whose discharge was due to one or more of several enumerated causes that demonstrate the fault of the employee. These causes include quitting because of dissatisfaction with prevailing rates of pay in the industry, quitting to move to another area or to marry, insubordination, violation of a statute or company rule which resulted or could result in serious damage to the employer's property or interests, improper use of intoxicating beverages or controlled substances, incarceration, theft, willful neglect of an employer's property or interests, offensive behavior, shoddy work, failure to safeguard the employer's property, taking unauthorized vacations, and refusal without good cause to accept a transfer or to work a different shift. Unless the reason for the employee's discharge comes within one of the grounds set forth in section 8–73–108(5)(e), the employee is entitled to unemployment benefits. *Sayers v. American Janitorial Service, Inc.,* 162 Colo. 292, 425 P.2d 693 (1967).

■ In a section 1983 action to redress an employee's claim that his or her dismissal violated the first amendment to the United States Constitution, the employee must establish that (1) constitutionally protected conduct (2) was a substantial, motivating factor in the employer's decision to discharge the employee. *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Ward v. Industrial Commission,* 699 P.2d 960 (Colo.1985). If

an employee makes that initial showing, the employer may avoid liability upon proof that the employer would have reached the same decision in the absence of protected conduct, *id.,* or that the relationship between employer and employee is of such a personal nature that the conduct materially undermined an overriding governmental interest in the effective administration of state programs. *Pickering v. Board of Education,* 391 U.S. 563, 570 n. 3, 88 S.Ct. 1731, 1735 n. 3, 20 L.Ed.2d 811 (1968); *Johnson v. Jefferson County Board of Health,* 662 P.2d 463, 474 (Colo.1983). In the context of employee dismissal controversies, speech is not protected unless it relates to a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

None of the issues presented in Morrison's claim for unconstitutional discharge were litigated or decided in the unemployment compensation proceeding. The appeals referee did not consider whether Morrison's "outspokenness" was constitutionally protected, nor did it determine whether the conduct, if protected, justified Morrison's termination or if the School District would have reached the same conclusion in the absence of protected conduct. The appeals referee considered only whether Morrison was at fault for her dismissal under the distinct statutory criteria set forth in section 8–73–108(5)(e), 3B C.R.S. (1986). The issues in the two proceedings therefore were not identical, and the trial court erred in applying the doctrine of collateral estoppel to Morrison's claim for unconstitutional discharge. *See Rawson v. Sears, Roebuck and Co.,* 554 F.Supp. 327 (D.Colo.1983) (an Industrial Commission determination that the plaintiff employee was dismissed for questionable job performance did not estop litigation of the plaintiff's age discrimination claim, where the issues addressed in the two proceedings were not identical).

## V.

The law is settled that the party against whom estoppel is asserted does not have a full and fair opportunity to litigate an issue that the party did not have an adequate incentive to contest. *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Lewis v. International Business Machines Corp.,* 393 F.Supp. 305 (D.Or.1974) (adverse findings in an unemployment compensation proceeding do not bind a former employee in his action for breach of contract where the employee did not have an adequate incentive to litigate common issues in the compensation proceeding); Restatement (Second) of Judgments § 28(5) (1982); C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4223, at 221 (1981). In *Hicks v. Quaker Oats Co.,* 662 F.2d 1158 (5th Cir.1982), the court stated:

> A common objection to using offensive [collateral] estoppel is that in the first action the defendant may have little incentive to defend the suit vigorously if it is for a small amount, and so it is unfair to subject him to a much larger liability later on the basis of the earlier litigation. Precisely the situation obtains here. The [former] litigation subjected Quaker to a liability of approximately $35,000 while the present plaintiffs relying on the judgment stand to collect over $400,000.

*Id.* at 1171 (footnote omitted).[5]

Pursuant to section 8–76–102, 3B C.R.S. (1986), the School District must pay taxes

---

5. Although *Hicks* involved the application of collateral estoppel by a non-party to the prior proceeding, its principle is equally applicable to the use of collateral estoppel in this case. *See Milton Bradley Co. v. Diamantis,* No. 85–0099–F (D.Mass. Oct. 9, 1986) [Available on WESTLAW, DCTU database] (the unfairness of applying preclusion where there is a great disparity in the amounts in controversy in the two actions is particularly significant in the unemployment context); *Foster v. Evans,* 384 Mass. 687, 429 N.E.2d 995, 1000 n. 10 (1981) (the concept of collateral estoppel is based on the idea that the party to be estopped has had the incentive and opportunity to litigate the matter fully (quoting A. Vestal, *Res-Judicata/Preclusion,* V–401 (1969))).

to the Division of Employment and Training based upon total wages paid by the School District. Although the taxes may vary according to the amount paid to claimants out of the fund created by the taxes, the taxes remain relatively constant. *See* § 8–76–102 to –103, 3B C.R.S. (1986). The liability that the School District incurs when a discharged employee is granted benefits is significantly different than the relief awarded to Morrison by the trial court, which included a two-year reinstatement and back pay and costs in excess of $31,000. The School District was not represented by counsel at the unemployment compensation hearing, and it did not appeal the referee's decision. The School District had a greater incentive to defend Morrison's section 1983 claim than it had to defend her claim for benefits, and the imposition of significant liability based upon findings entered in an unemployment compensation hearing would deprive the School District of a full and fair opportunity to litigate the material issues involved.[6]

Accordingly, the decision of the court of appeals is reversed, and the case is remanded to the court of appeals with directions to reverse the trial court's entry of summary judgment.

---

6. Morrison also asserts that we must affirm the court of appeals decision even if collateral estoppel does not apply because the School District failed to respond to her motion for summary judgment by means other than argument of counsel. We disagree. Summary judgment is a drastic remedy which may be granted only when evidentiary and legal prerequisites are clearly established. *General Insurance Co. of America v. City of Colorado Springs,* 638 P.2d 752, 760 (Colo.1981). In *Sullivan v. Davis,* 172 Colo. 490, 474 P.2d 218 (1970), we said:

> [W]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and, of course, he does not do that by mere denial or holding back evidence.

*Id.* at 496, 474 P.2d at 221 (quoting *Bruce Construction Corp. v. United States,* 242 F.2d 873 (5th Cir.1957)).

Morrison's motion for summary judgment alleges only that the referee's decision is binding upon the School District in this case, and that she is entitled to judgment as a matter of law. The School District responded to the motion by arguing that collateral estoppel does not apply. Because we hold that collateral estoppel is inapplicable to this case, the referee's decision does not establish "a convincing showing that genuine issues of fact are lacking," and the School District was not required to produce opposing affidavits to demonstrate the existence of disputed facts.

We do not consider Morrison's contention that the School District's testimony in the unemployment compensation proceeding establishes "estoppel by judicial act." *See Peters v. Peters,* 82 Colo. 503, 261 P. 874, 876 (1927); *Hinderlider v. Town of Berthoud,* 77 Colo. 504, 238 P. 64 (1925). That testimony is not part of the record in this case. *See Eveready Freight Service v. Public Utilities Commission,* 131 Colo. 172, 280 P.2d 442 (1955) (matters not appearing in the record can not be considered on appeal).

Other claims raised by Morrison are without merit.